[Cite as *State v. Nichols*, 2013-Ohio-3285.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                    :            C.A. CASE NO.    2012 CA 38

v.                                               :            T.C. NO.    10CR98

MARTIN NICHOLS                                   :            (Criminal appeal from
                                                                Common Pleas Court)

    Defendant-Appellant                   :

                                                 :

     . . . . . . . . . .

**O P I N I O N**

Rendered on the    26th    day of      July     , 2013.

     . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 4428 N. Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

     . . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Martin Nichols appeals from a sentence imposed by the

Clark County Court of Common Pleas, Criminal Division, during a re-sentencing hearing held pursuant to our holding in *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082 (2d Dist.) (hereinafter "*Nichols I*"). Nichols filed a timely notice of appeal on June 4, 2012.

{¶ 2} We set forth the history of the case in *Nichols I*, and repeat it herein in pertinent part:

Nichols worked as a janitor at the Enon Elementary School for approximately four years, and one of his responsibilities was to clean the cafeteria after lunch. Pursuant to his plea, Nichols admitted to sexual contact with four girls, who were first and second grade students at the school; specifically, according to the facts stated by the prosecutor at the plea hearing, he touched the girls "on their butts and pubic area of their skirts and under their skirts and over their clothing" while they worked with him to clean the cafeteria.

Nichols was indicted on four counts of gross sexual imposition, which occurred over a period of five months, and pled guilty to each offense. In exchange, the State agreed that a presentence investigation ("PSI") would be prepared and considered before sentencing.

The PSI that was submitted to the court included a probation department report, which indicated that Nichols was 40 years old, was married with two young children, and had no prior adult or juvenile criminal record. It also included numerous letters from Nichols's family members,

church associates, friends, and his attorney asking that his good character, contributions to the community, and genuine remorse be considered in imposing sentence. The PSI did not include any recommendation from the court's probation officer.

The court was also presented with a "Victim Impact Statement" regarding one of the victims, R.T., and a letter purportedly from another victim, B.P. The two other victims chose not to complete victim impact statements, but one of the mothers spoke at sentencing.

**{¶ 3}** Nichols subsequently pled guilty to four counts of gross sexual imposition. He was sentenced to a five-year term of imprisonment on each count, to be served consecutively, for an aggregate term of twenty years, five years of mandatory post-release control, and was classified as a Tier II sexual offender. Nichols appealed from his conviction, challenging only his sentence.

**{¶ 4}** On appeal, Nichols contended that the sentence imposed by the trial court was contrary to law because it failed to apply the recidivism factors enumerated in R.C. 2929.12(D). Nichols also argued that the trial court abused its discretion when it imposed maximum consecutive sentences. In reversing the sentence imposed by the trial court, we held that Nichols' sentence was not contrary to law, but we also found that the trial court abused its discretion when it sentenced Nichols to maximum, consecutive prison terms. Accordingly, we remanded the matter to the trial court for re-sentencing.

**{¶ 5}** On September 29, 2011, the State filed an application for reconsideration of our decision in *Nichols I*. On December 27, 2011, we issued a decision overruling the

State's application for reconsideration. In that decision, we found that the State was not permitted to expand upon previously presented evidence at Nichols' resentencing.

{¶ 6} On May 4, 2012, Nichols was resentenced to three years on each of the four counts of GSI to be served consecutively, for an aggregate sentence of twelve years in prison. Nichols was also designated as a tier-two sexual offender.

{¶ 7} It is from this judgment that Nichols now appeals.

{¶ 8} Initially, we note that at re-sentencing, the State informed the trial court, and the court agreed, that Nichols should be re-sentenced under H.B. 86, rather than the law in effect at the time Nichols was originally sentenced. The trial court believed and stated at re-sentencing that even though H.B. 86's statutory range was twelve to thirty-six months, it still intended to sentence Nichols using the pre-H.B. 86 statutory range of one to five years but made the finding that H.B. 86 requires regarding consecutive sentences.[1] This decision made by the trial court resulted in what we would characterize as a hybrid sentence using elements of both pre and post-H.B. 86 sentencing guidelines. On March 14, 2013, we ordered the parties to submit additional briefing regarding which version of the sentencing guidelines should have been utilized at Nichols' re-sentencing.

{¶ 9} Upon review, we conclude that H.B. 86 controls in the instant case. Recently, the Eighth District Court of Appeals held that in a sentencing or re-sentencing occurring on or after the effective date of H.B. 86, September 30, 2011, the revived version of R.C. 2929.14(C)(4) was in effect and the court had to make certain findings before

---

[1]However, the correct sentencing range for one count of GSI under H.B. 86 is twelve to sixty months in prison.

imposing consecutive sentences. *State v. Venes*, 2013-Ohio-1891, --- N.E.2d ---, 2013 WL 1932857 (8th Dist.). Nichols was originally sentenced on May 6, 2010, after pleading guilty to four counts of GSI. As previously stated, Nichols appealed his sentence, and we reversed and remanded for re-sentencing. On May 4, 2012, the trial court re-sentenced Nichols to three years on each of the four GSI counts and ordered the sentences to be served consecutively. Nichols was sentenced after the effective date of H.B. 86. Therefore, pursuant to H.B. 86, the trial court was required to make certain findings before imposing consecutive sentences. See *Id*.

{¶ 10} Having found that the trial court's decision to impose consecutive sentences was governed by R.C. 2929.14(C)(4), we conclude on this record that the court's finding fails to meet the statutory criteria.

{¶ 11} R.C. 2929.14(C)(4) under H.B. 86 requires a trial court to make certain findings before imposing consecutive sentences:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 12}** Significantly, the record does not support the trial court's imposition of consecutive sentences under H.B. 86. Specifically, the court misapplied R.C. 2929.14(C)(4)(b). At the sentencing hearing on May 4, 2012, the trial court made the following finding with respect to the imposition of consecutive sentences:

I am going to order that on Counts One, Two, and Three and Four, for each count you will be sentenced to three years in the Ohio State Penitentiary. *I find that consecutive sentences are necessary to protect the public from future crime,* and to punish you.

I don't believe consecutive sentences are disproportionate to the seriousness of your conduct, and it's not disproportionate to the danger you pose to the public.

I also find that these offenses *were part of a course of conduct and*

*that the harm caused was so great that no single prison term for any of the offenses committed accurately reflects the seriousness of your conduct*, so I will order that these sentences will run consecutively.  Your total sentence will be twelve years in the Ohio State Penitentiary.

**{¶ 13}** These findings made by the trial court, however, fly directly in the face of our decision in *Nichols I*.  In regards to R.C. 2929.14(C)(4), we specifically found the following:

Insofar as only one of the statutory factors applied to suggest that Nichols's offense was more serious than conduct normally constituting the offense, and *there were no statutory or non-statutory factors tending to show that Nichols is likely to commit future crimes and all of the statutory factors were present to show that he is not likely to commit future crimes, it is difficult to imagine the trial court's basis for imposing maximum consecutive sentences in this case. Nichols I*, ¶ 34.

**{¶ 14}** Accordingly, the trial court had no basis upon which to order Nichols to serve consecutive sentences pursuant to 2929.14(C)(4) because we previously held that the evidence adduced established that he is not likely to commit future crimes.

**{¶ 15}** With respect to 2929.14(C)(4)(b), we stated the following in *Nichols I*:

However, there is little, if any, evidence in the record to suggest that the victims suffered "great" damage.  As we discussed above, there was no evidence of physical injury, and while the anger, fear, and disturbances experienced by the children are heartbreaking, there is nothing in the record

to suggest that these injuries are qualitatively greater than those predictably experienced by any victim of a gross sexual imposition or that the children are unlikely to overcome these effects in a reasonable period of time with the love and support of their families and the knowledge that Nichols has admitted his wrongdoing and been punished for it.

We in no way detract from the criminality of Nichols's actions and the wrong done to the children; however, treating this case as if it were the most serious form of the offense and Nichols as being the most depraved offender is not supported by the record and, further, depreciates the lawfulness and validity of such a finding in those cases that truly do merit such conclusions.

\*\*\*

"It will take a courageous judge not to '\*\*\* stack' every sentence in multiple-count cases." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, at ¶ 31 (Lanzinger, J., concurring).

*Nichols I*, ¶¶ 38-39.

{¶ 16} In light of the above language from *Nichols I*, the trial court had no evidentiary or legal basis upon which to order Nichols to serve consecutive sentences pursuant to R.C. 2929.14(C)(4)(b) because we previously held that his conduct, while certainly egregious, did not constitute the most serious form of the offense. We note that in *Nichols I*, the only factor indicating that Nichols's offense was more serious than conduct normally constituting the offense of gross sexual imposition was that his occupation

facilitated the offense. We held, however, that finding, standing alone, was insufficient to be the basis for the imposition of consecutive sentences on Nichols. In the instant case, as in *Nichols I*, the trial court abused its discretion by imposing consecutive sentences.

{¶ 17} Lastly, we note that the trial court again failed to properly consider the factors for "seriousness" and likelihood of recidivism pursuant to R.C. 2929.12(B)(C)(D) & (E). As we emphasized in *Nichols I*, Nichols had no prior criminal record, and the record failed to establish that the victims suffered any "serious" psychological harm as a result of Nichols' actions. No evidence was adduced at any point that the victims suffered any physical harm.

{¶ 18} R.C. 2929.12(B) and (C) enumerate factors to be considered in weighing the seriousness of an offender's conduct, and R.C. 2929.12(D) and (E) enumerate factors to be considered in weighing the likelihood of the offender's recidivism. The court also may consider any other factors that are relevant to achieving the purposes and principles of sentencing. *State v. Saunders,* 2d Dist. Greene No. 2009 CA 82, 2011-Ohio-391, ¶11.

{¶ 19} Nichols' sole supplemental assignment of error is sustained.

{¶ 20} On the authority contained in Section 3(B)(2), Article IV of the Ohio Constitution and R.C. § 2953.08(G)(2)(b), Nichols' prison sentence is modified to a sentence of three years on each of the four counts of gross sexual imposition to run concurrently to one another for an aggregate sentence of three years imprisonment. This modification does not alter Nichols' Tier II sex offender designation nor the five year period of post-release control.

. . . . . . . . . .

FAIN, P.J., concurs.

WELBAUM, J., dissenting:

{¶ 21}    I very respectfully dissent.

**THE TRIAL COURT COMPLIED WITH HB 86**

{¶ 22}    Although at the May 4, 2012 re-sentencing, the trial court stated the maximum sentence for each count of Gross Sexual Imposition was three years in prison, as noted by the majority it was actually five under HB 86. R.C. 2907.05(A)(4). The HB 86 version of R.C. 2929.14(A)(3)(a) provides for a maximum term of 60 months for such violations. The trial court imposed a mid-range thirty-six month sentence for each count provided by HB 86 evidently thinking it was the maximum. In any event, this error benefits Nichols and is not prejudicial.

{¶ 23}    The majority in *Nichols I* and the majority today determined that the trial court properly found one factor specifically listed in the sentencing statute to support that Nichols' multiple offenses were more serious than conduct normally constituting the offenses. This sole listed factor was that Nichols' occupation facilitated the offenses. R.C. 2929.12(B)(4).    Although these majorities found this singular listed factor inadequate, the weight to be given to sentencing factors is not numerical in nature and is within the sound discretion of the trial court. Additionally, the court is required to consider all relevant factors regarding the offender, the offenses, and the victims, rather than being limited to the list.

{¶ 24}    The statute pertaining to consideration of seriousness states:

The sentencing court shall consider all of the following that apply *regarding the offender, the offense, or the victim, and any other relevant factors,* as

indicating that the offender's conduct is more serious than conduct normally constituting the offense. * * * R.C. 2929.12(B). Emphasis added.

{¶ 25} When the factor of occupation facilitating the offense is weighed with the tender ages of the four victims, the number of offenses occurring over a five month period at an elementary school, and the injurious effect of the crimes regarding two of the victims who provided information, I do not believe the trial court abused its discretion in determining that the seriousness element had been satisfied in favor of imposing consecutive mid-range sentences totaling twelve years under authority of R.C. 2929.14(C)(4). I would affirm the trial court.

**IF THE CASE IS NOT AFFIRMED IT SHOULD BE REMANDED FOR A FULL POST HB 86 EVIDENTIARY SENTENCING HEARING**

{¶ 26} Today, on the basis of a pre-HB 86 record the case is reversed for lack of evidentiary support for findings retroactively required by HB 86. In *Nichols I*, the decision of September 29, 2011, overruling the State's motion for reconsideration prohibited the parties from expanding the record at the re-sentencing. This prohibited the parties from presenting any evidence or facts to address the retroactive application of HB 86 regarding consecutive sentencing.

{¶ 27} The sentencing statutes requiring such findings were not in existence at the time of the original sentencing when evidence was presented. Accordingly if the case were reversed, I would remand the matter for re-sentencing allowing the parties to expand the record to address the requirements of HB 86 as retroactively applied.

**IF THE CASE IS REVERSED IT SHOULD BE REMANDED FOR RE-SENTENCING**

{¶ 28} In the event the sentence were reversed, I believe the more appropriate procedure would be to remand the case for re-sentencing by the trial court in accordance with R.C. § 2953.08(G)(2).

{¶ 29} For these reasons, I very respectfully dissent.

. . . . . . . . . .

Copies mailed to:

Lisa M. Fannin
J. Allen Wilmes
Hon. Douglas M. Rastatter
Warden Norm Robinson