[Cite as *State v. Thomas*, 2014-Ohio-1120.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee                    :  C.A. CASE NO. 25331 and 25332

v.                                        :  T.C. NO.    11CR2231 and 11CR4305

MICHAEL A. THOMAS                         :        (Criminal appeal from
                                                    Common Pleas Court)
    Defendant-Appellant                   :

                                          :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____21st____ day of _____March_____, 2014.

· · · · · · · · · ·

MATTHEW T. CRAWFORD, Atty. Reg. No. 0089205, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CHARLES W. MORRISON, Atty. Reg. No. 0084368, 1105 Wilmington Avenue, Dayton, Ohio 45420
    Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}   Defendant-appellant Michael A. Thomas appeals his conviction and sentence for one count of aggravated possession of drugs, and one count of possession of

heroin. Thomas filed a motion for delayed appeal with this Court. For good cause, we granted the delayed appeal.

{¶ 2} On January 19, 2012, Thomas was indicted in Case No. 2011-CR-2231 for one count of aggravated possession of drugs. . Shortly thereafter, Thomas was indicted in a separate case, Case No. 2011-CR-4305, for one count of possession of heroin and one count of possession of cocaine. At his arraignment in Case No. 2011-CR-2231, Thomas stood mute, and the trial court entered a plea of not guilty on his behalf. A not guilty plea was also entered on Thomas' behalf at his arraignment in Case No. 2011-CR-4305.

{¶ 3} On February 23, 2012, Thomas plead guilty to one count of aggravated possession of drugs in Case No. 2011-CR-2231 and one count of possession of heroin in Case No. 2011-CR-4305. As part of a negotiated plea deal, the State dropped the count of possession of cocaine in Case No. 2011-CR-4305 and agreed to remain silent at sentencing.

{¶ 4} At his sentencing hearing, Thomas made an oral motion to withdraw his guilty pleas and have new counsel appointed to represent him. The trial court proceeded with sentencing on the two counts and announced that new counsel would be appointed to assist Thomas on his motion to withdraw his guilty pleas. The trial court sentenced Thomas to eleven months for aggravated possession of drugs in Case No. 2011-CR-2231 and seventeen months for possession of heroin in Case No. 2011-CR-4305. The trial court ordered that the sentences run consecutively.

{¶ 5} On May 18, 2012, the trial court held an evidentiary hearing on Thomas' motion to withdraw his guilty pleas. At the close of evidence, the trial court overruled Thomas' motion from the bench and journalized it.

{¶ 6}    It is from this judgment that Thomas now appeals.[1]

{¶ 7}    Because they are interrelated, Thomas's first and second assignments of error will be discussed together as follows:

"APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, BECAUSE COUNSEL SHOULD HAVE REQUESTED A HEARING DEVICE FOR HIS HEARING-IMPAIRED CLIENT AT HIS PLEA HEARING."

"THE TRIAL COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING TO DETERMINE THE EXTENT OF APPELLANT'S HEARING IMPAIRMENT AFTER BEING PLACED ON NOTICE OF HIS IMPAIRMENT."

{¶ 8}    In his first assignment of error, Thomas contends that his trial counsel was ineffective for failing to request that a hearing device be supplied to him by the trial court at his plea hearing.  Thomas asserts that he was prejudiced in this regard because, but for his counsel's alleged deficient performance, he would not have entered the guilty pleas.  Thus, Thomas argues that he was denied his right to effective assistance of counsel, and his convictions should therefore, be reversed.  In his second assignment, Thomas argues that the trial court erred when it failed to hold an evidentiary hearing once it became aware of his hearing difficulties at beginning of the hearing.

{¶ 9}    In order to demonstrate ineffective assistance of trial counsel, a defendant must demonstrate that counsel's performance was deficient and fell

---

[1]We note that on January 23, 2014, the State filed a notice of additional authority in support of its position regarding the fourth assignment of error.  The two cases cited by the State are *State v. Rodeffer*, 2d Dist. Montgomery No. 25574, 2013-Ohio-5759, and *State v. Polhamus*, 2d Dist. Miami No. 2013-CA-3, 2014-Ohio-145.

below an objective standard of reasonable representation, and that the defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of the defendant's trial or proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Hill*, 2d Dist. Greene No. 2004 CA 79, 2005-Ohio 3176. "When the evidence a defendant relies upon [sic] dehors the record that evidence must meet a threshold of cogency." *Id.* "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.'" *Id.*

{¶ 10} Upon review, the record of the plea hearing does not support Thomas' claim that his counsel was ineffective. The record establishes that Thomas' counsel and the trial court were aware of his hearing difficulties and took adequate steps in order to ensure that he could hear and understand the proceedings. During the plea hearing, the following exchange occurred:

Defense Counsel: We may have to come closer, Your Honor.

The Court: Yeah. Let's – *typically as we do with Mr. Thomas, since he has a hearing issue, if we could just have him step right up here in front of me so he can hear everything clearly.*

\*\*\*

The Court: Hi, Mr. Thomas.

Thomas: Hi.

The Court: *With this proximity between us, can you hear me okay?*

Thomas: *Yeah.*

The Court: *And are you able to hear what* [defense counsel] *has been telling you?*

Thomas: *Yeah.*

The Court: Okay. So, [defense counsel], how are we proceeding?

Defense Counsel: Your Honor, at this time, I believe Mr. Thomas is going to enter a plea to two counts. One is a Felony 4, possession of heroin in 2011-4305 [sic] and a Felony 5 count of aggravated possession in 2011-2231 [sic].

The Court: Okay.

Defense Counsel: The State is dismissing Count 2, possession, in 4305. And we will acknowledge that these pleas constitute grounds for revocation [indiscernible].

The Court: And, Mr. Thomas, is that you want to do, sir?

Thomas: Uh, yes.

The Court: Okay. So it's – what [defense counsel] has told me is that you're going to enter a guilty plea to a fourth-degree felony and a guilty plea to a fifth-degree felony; right?

Thomas: (No audible response.)

The Court: Okay.   Is the what you want to do?

Thomas: *Yeah.*

\*\*\*

The Court: Okay.   So as I go through this process of taking your guilty pleas, *if you have any questions or concerns, I need you to stop me and let me know.   Or, if there's anything that you're not hearing clearly, I need you to let me know that.   Okay?   Because I can repeat it but if you don't tell me that you're not hearing clearly, I'm going to assume that you're hearing everything I'm saying.   Fair enough?*

Thomas: Correct.

\*\*\* (Plea Colloquy)

The Court: Okay.   Do you – and, obviously, *I know you have a hearing issue and we're taking care of that by putting you really close to me; right?*

Thomas: *Correct*.

The Court: Okay.   Do you have any other condition that would make it difficult for you to understand your legal rights as I explain them to you?

Thomas: No, ma'am.

The Court: *And you understand that you have to tell me if you don't hear anything, right?*

Thomas: *Right*.

\*\*\*

The Court: Okay. *And you understand that you're going to be entering a guilty plea to a fifth degree felony and a fourth degree felony*?

Thomas: *Yes*.

***

The Court: Okay. *Are you being able to hear me –*

Thomas: *Yes*.

The Court: *– so far? Any questions or concerns over what we've gone over so far*?

Thomas: *No*.

The Court: Okay. And are you entering your guilty pleas today on these two cases – a Felony 4 and a Felony 5 – of your own free will.

Thomas: Yes.

***

The Court: Okay. Now, we're going to have the next charge, the Felony 5 charge read to you now.

The State: In Case No. 2011-CR-2231, the State charges that Michael A. Thomas, on or about February 2, 2011, in Montgomery County, State of Ohio, did knowingly obtain, possess, or use a controlled substance, to wit, Methadone, a drug included in Section I or II, contrary to the form of the statute in violation of Section 2925.11(A).

The Court: *And, Mr. Thomas, did you hear and understand what the prosecutor just said?*

Thomas: *Yes, ma'am.*

The Court: And you understand that's the other charge that you're pleading guilty to today?

Thomas: Yes, ma'am.

The Court: And are those facts true?

Thomas: Yes.

***

The Court: Okay.  And are you

sat

isf

ie

d

wi

th

yo

ur

le

ga

l

re

presentation on the cases?

Thomas: Yes.

\*\*\*

The Court: *Have you heard everything that I've gone over with you*?

Thomas: *Yes, ma'am.*

\*\*\*

The Court: *\*\*\* Now, were you able to hear and understand everything that we've gone over, sir.*

Thomas: *Yes.*

The Court: Okay.  Very good.  I'll see you then on March 8th for

sentencing.

*Now, when you do get interviewed for your pre-sentence investigation, it's going to be important that you tell them that you have a hearing problem so they can make sure that they make arrangements so you can understand what they're asking you.*

Thomas: *Okay*.

The Court: Okay?   Thank you, sir.

Defense Counsel: Thank you.

Thomas: Thank you.

{¶ 11}   Thomas argues that defense counsel's awareness of his hearing difficulties should have prompted counsel to request that a hearing device be provided to him at the plea hearing.   Thomas asserts that without a hearing device, he was unaware that he was pleading guilty to a fifth degree felony, and therefore, did not appreciate the maximum possible sentences which could be imposed.   The record clearly refutes his claim.

{¶ 12}   Initially, we note that Thomas does not direct us to, nor have we located on our own, any specific instances in the record where he was unable to hear or understand everything that was discussed at the plea hearing.   Defense counsel raised the issue of Thomas' hearing difficulties at the beginning of the hearing when he asked the trial court if Thomas could move closer to the bench during the plea colloquy.   Defense counsel alerted the trial court to Thomas' hearing impairment, and steps were immediately taken to accommodate him.   At every significant juncture throughout the plea hearing, the trial court repeatedly asked Thomas if he could hear and understand the proceedings.   In each

instance, Thomas indicated "yes." Thomas never expressed any doubt or confusion regarding the nature of the proceedings or the charges to which he was pleading guilty. Specifically, Thomas never stated that he couldn't hear the plea colloquy after the trial court permitted him to move closer to the bench in order to compensate for his hearing difficulties. Thus, we cannot say, based on the record before us and in view of the presumption of defense counsel's competency, that counsel's performance was deficient for failing to request a hearing device for Thomas during the plea hearing.

{¶ 13} In his second assignment, Thomas argues that the trial court erred when it failed to hold an evidentiary hearing in order to determine the extent of his hearing impairment after being made aware of the condition at the beginning of the plea hearing.

{¶ 14} The Confrontation Clause of the Sixth Amendment to U.S. Constitution contains three essential elements, to wit: 1) that the defendant be afforded the opportunity to be physically present at trial; 2) that he be competent to assist in his defense; and 3) that he be able to understand the language of the forum. *State v. Mahan*, 2d Dist. Montgomery No. 15071, 1996 WL 65250 (February 16, 1996). The Ohio Supreme Court has stated that "[a] defendant who cannot hear is analogous to a defendant who cannot understand English, and a severely hearing-impaired defendant cannot be tried without adopting reasonable measures to accommodate his or her disability." *State v. Schaim*, 65 Ohio St.3d 51, 64, 600 N.E.2d 661 (1992). Accordingly, the Court construed the Sixth Amendment to require "a trial court to grant an evidentiary hearing when a defendant makes a credible claim that he or she is seriously hearing-impaired." *Id*. at 64-65. "Once a court grants an evidentiary hearing to determine the degree of the defendant's disability, it is within the trial court's discretion to

decide whether the defendant requires assistance to understand the proceedings and the best means to accomplish that goal." *Id*. at 65.

{¶ 15} Initially, we note that no objection was made at the time of the plea hearing. Thus Thomas has waived all but plain error under Crim. R. 52(B) regarding the trial court's failure to hold an evidentiary hearing. In *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978), the Supreme Court has provided guidance for the consideration of plain error:

> Ordinarily, * * * the failure to object * * * constitutes a waiver of any claim of error relative thereto.
>
> Further, * * * [it] does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.

{¶ 16} In support of his argument that the trial court was required to hold an evidentiary hearing to determine the extent of his hearing impairment, Thomas cites to *State v. Schaim*, 65 Ohio St.3d 51, wherein the Ohio Supreme Court discussed the case of a defendant who had been unable to hear significant portions of the trial testimony against him. The *Schaim* court held that when a defendant makes a credible claim that he or she is *severely* hearing impaired, the trial court is required by the Sixth Amendment to hold an evidentiary hearing to determine the extent of the impairment and what reasonable accommodations will be necessary to address the issue.

{¶ 17} Thomas also cites a case from the Tenth Appellate District, *City of Columbus v. Morris,* 10th Dist. Franklin No. O1AP-1026, 2002-Ohio-1986, in which the court held that the trial court was precluded from proceeding to trial without holding an evidentiary hearing to determine whether the defendant needed an interpreter, where the

defendant alerted the trial court in both pre-trial proceedings and during the trial that he was deaf and did not understand the majority of the proceedings.

{¶ 18} The facts in *Schaim* and *Morris*, however, are clearly distinguishable from the case at bar. In the instant case, Thomas made no claim at the beginning of the plea hearing that he was *severely* hearing impaired, nor that his hearing was so poor that he could not understand the nature of the proceedings. Once the trial court permitted Thomas to move closer to the bench, he affirmatively stated that he could hear what the trial court was saying. As previously noted, the trial court stopped the proceedings at several points and asked Thomas if he understood what was being said, including the charges read by the prosecutor. Each time, Thomas responded in the affirmative.[2] Therefore, we conclude that the record establishes that the accommodations made by the trial court to address Thomas' hearing difficulties were satisfactory. The trial court did not have to hold a separate evidentiary hearing because there was no indication that Thomas was unable to hear and understand the proceedings once he moved closer to the bench. By Thomas' own admission at the plea hearing, he was able to hear the trial court's colloquy and respond appropriately to all of the questions he was asked. Accordingly, the trial court did not err, plainly or otherwise, when it failed to hold an evidentiary hearing in order to address the extent of Thomas' impairment.

{¶ 19} Thomas' first and second assignments of error are overruled.

{¶ 20} Thomas' third assignment of error is as follows:

---

[2]We have reviewed the audio visual recording of the plea, and Thomas is standing just beneath the trial judge in front of the bench. Further, all responses were appropriate to the questions asked by the trial court.

{¶ 21} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO WITHDRAW PLEAS."

{¶ 22} In his third assignment, Thomas contends that the trial court erred when it denied his motion to withdraw. Specifically, Thomas asserts that the trial court should have granted his motion to withdraw because he did not understand the possible defenses to the crimes for which he was charged and the range of potential sentences for those charges. Thomas blames his lack of understanding on his trial counsel who he alleged failed to adequately advise him regarding the charged offenses and their potential sentences. Thomas also argues that the trial court's Crim. R. 11 colloquy was deficient as he was unable to hear entire portions of the plea hearing due to his hearing difficulties.

{¶ 23} We note that Thomas orally moved to withdraw his pleas on the day of his sentencing hearing but before the trial court imposed sentence. Thomas then filed a pro se motion to withdraw four days after the sentencing hearing. The trial court analyzed Thomas' motion to withdraw under both the pre and post- sentencing standards. The trial court ultimately held that Thomas' motion to withdraw failed under either standard.

{¶ 24} As this Court has previously noted:

* * * Crim.R. 32 .1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under the foregoing rule, a pre-sentence motion to vacate a guilty plea "should be freely and liberally granted."

*State v. Xie* (1992), 62 Ohio St.3d 521, 527. Nevertheless, even

under the pre-sentence standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion. *Id.* The pre-sentence standard, however, is far more lenient than the "manifest injustice" standard applicable to post-sentence motions. *State v. Fugate,* Montgomery App. No. 21574, 2007-Ohio-26, ¶ 10.

* * *

But even under the more lenient pre-sentence standard, "a defendant must show a reasonable and legitimate basis for the withdrawal of the plea." * * * "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. * * * Likewise, a trial court's ultimate decision to grant or deny a pre-sentence motion to withdraw a guilty plea is subject to review for an abuse of discretion. *Fugate*, at ¶ 10. *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181,¶ 7, 10.

**{¶ 25}** "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990). *Feldmiller v. Feldmiller,* 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

**{¶ 26}** As this Court has noted:

"A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim. R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." *State v. Askew*, 2d Dist. Montgomery No. 20110, 2005-Ohio-4026, ¶ 8, quoting *State v. Barnett*, 73 Ohio App.3d 244, 250, 596 N.E.2d 1101 (2d Dist. 1991).

**{¶ 27}** Further, this Court in *Askew* noted as follows:

When conducting the hearing on the motion to withdraw, the trial court may consider: "(1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim. R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw, * * * (5) whether the timing of the motion was reasonable; (6) the reasons for the motion; (7) whether the defendant understood the nature of the charges and potential sentences, and (8) whether the accused was perhaps not guilty or had a complete defense to the charge." *Askew,* at ¶ 11, quoting *State v. Cuthbertson,* 139 Ohio App.3d 895, 898-899, 746 N.E.2d 197 (7th Dist. 2000).

**{¶ 28}** Crim.R. 11(C)(2) provides:

In felony cases the court may refuse to accept a plea of guilty * * * and shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * * , and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant of and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 29} At the hearing on the motion to withdraw, Thomas' trial counsel, Matthew Arntz, testified that prior to the plea, he met with Thomas at the jail and advised him of the maximum penalty he could receive after entering the negotiated plea. Attorney Arntz further testified that he informed

Thomas that a prison term was likely.    Prior to the March 8, 2012, sentencing hearing, Arntz met with the trial court in chambers to discuss the case.    After the meeting, Arntz informed Thomas that the judge was inclined to send him to prison.    The trial court credited Arntz's testimony over that of Thomas' and found that there were adequate attorney-client communications prior to the plea hearing.

{¶ 30}   Moreover, although Thomas claimed to have missed portions of the plea hearing due to his hearing impairment, his claim is undermined by the record.  With the exception of only one instance where the trial court had to repeat itself at the plea hearing, the record establishes that Thomas heard and understood the proceedings.  Upon review, we note that Thomas indicated that he was satisfied with the representation afforded him, and he had sufficient time to discuss the matter with his lawyer. Thomas acknowledged that he had not been threatened or promised anything other than the dismissal of a charge against him in return for his guilty pleas. Thomas stated he was not under the influence of drugs or alcohol.  Thomas did not indicate to the court that he was under any emotional stress.   Thomas indicated that his plea was voluntary and acknowledged that he understood the nature of the charges against him.   Thomas acknowledged all of his rights, indicated that he understood them, and signed the plea forms.

{¶ 31}   When Thomas testified at the hearing on the motion to withdraw his plea, he stated several reasons for wanting to withdraw his plea, and he contradicted many of the statements he made at the plea hearing, such as his previous responses to the trial judge that he had heard and understood the plea. Nevertheless, the trial court was not required to credit this testimony at the hearing

on the motion to withdraw his pleas. The trial court gave full and fair consideration to Thomas' motion to withdraw his pleas. On this record, the trial court did not abuse its discretion in denying Thomas' request to withdraw his guilty plea.

**{¶ 32}** Thomas' third assignment of error is overruled.

**{¶ 33}** Thomas' fourth assignment of error is as follows:

**{¶ 34}** "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUISITE JUDICIAL FINDINGS MANDATED BY R.C. 2929.14(C)(4)."

**{¶ 35}** In his fourth assignment, Thomas argues that the trial court failed to make the requisite judicial findings pursuant to R.C. 2929.14(C)(4) before imposing consecutive sentences in the instant case.

**{¶ 36}** In *State v. Nichols*, 2d Dist. Clark No. 2012 CA 38, 2013-Ohio-3285, ¶ 9, we recently stated the following:

> Recently, the Eighth District Court of Appeals held that in a sentencing or re-sentencing occurring on or after the effective date of H.B. 86, September 30, 2011, the revived version of R.C. 2929.14(C)(4) was in effect and the court had to make certain findings before imposing consecutive sentences. *State v. Venes*, 2013-Ohio-1891, --- N.E.2d ---, 2013 WL 1932857 (8th Dist.). Nichols was originally sentenced on May 6, 2010, after pleading guilty to four counts of GSI. As previously stated, Nichols appealed his sentence, and we reversed and remanded for re-sentencing. On

May 4, 2012, the trial court re-sentenced Nichols to three years on each of the four GSI counts and ordered the sentences to be served consecutively. Nichols was sentenced after the effective date of H.B. 86. Therefore, pursuant to H.B. 86, the trial court was required to make certain findings before imposing consecutive sentences. See *Id.*

{¶ 37} Similar to the defendant in *Nichols*, we find that the trial court's decision to impose consecutive sentences was governed by R.C. 2929.14(C)(4). Furthermore, we conclude on this record that the court's imposition of consecutive terms fails to meet the statutory criteria.

{¶ 38} R.C. 2929.14(C)(4) under H.B. 86 requires a trial court to make certain findings before imposing consecutive sentences:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct,

and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 39} Thomas contends that the trial court failed to find that the consecutive sentence is not disproportionate to the seriousness of the offender's conduct and not disproportionate to the danger the offender poses to the public, as required by R.C. 292.14(C)(4). When it imposed consecutive sentences upon Thomas, it made the following finding:

And one of the reasons that the Court is requiring that the sentences be served consecutively is because he has two prior cases where he is on supervision. And I'm imposing consecutive sentences to try to create the maximum deterrent effect as well as punishment for picking up so many cases.

{¶ 40} Upon review, we conclude that the record is devoid of any finding that the consecutive sentence is not disproportionate to the seriousness of the offender's conduct and not disproportionate to the danger the offender poses to the public. The trial court did not include these two findings in the judgment entries imposing sentence or pronounce these findings orally at the sentencing hearing. Simply put, the trial court failed to make the findings necessary for the imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4). *Nichols*, 2013-Ohio-3285; *State v. Wills*, 2d Dist. Montgomery No. 25357, 2013-Ohio-4507. "As a remedy the matter will be remanded to the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to enter the proper findings on the record." *Wills*, at ¶ 32.

{¶ 41} Thomas' fourth and final assignment of error is sustained.

{¶ 42} Thomas' fourth assignment of error having been sustained, his sentence is reversed, and the matter is remanded to the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4), and if so, to enter the proper findings on the record. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., and WELBAUM, J., concur.

Copies mailed to:

Matthew T. Crawford
Charles W. Morrison
Hon. Mary L. Wiseman